| | |
|---|---|
| KAI THORUP, THE HALCYON HOUSE LLC, and OBSIDIAN NINE LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF COLLEGE PARK, BIANCA MOTLEY BROOM, JAMELLE E. MCKENZIE, RODERICK GAY, TRACIE ARNOLD, and JOSEPH CARN a/k/a JOE CARN, <br><br> Defendants. | C.A. No. 25-CV-07429-TWT |

## CITY DEFENDANTS' RESPONSE IN OPPOSITION TO PROPOSED INTERVENOR RYAN KELLY'S MOTION TO INTERVENE

COMES NOW Defendants City of College Park, Georgia ("City" or "College Park"), Mayor Bianca Motley Broom ("Mayor"), Council Members Jamelle E. McKenzie ("McKenzie"), Roderick Gay ("Gay"), Tracie Arnold ("Arnold"), and Joseph Carn a/k/a Joe Carn ("Carn") (*collectively* "City Defendants"), by through the undersigned counsel of record, and submit this Response in Opposition to Proposed Intervenor Ryan Kelly's ("Kelly") Motion to

Intervene ("Motion to Intervene"), with supporting Memorandum of Law pursuant to Rules 24 (a) and (b) of the Federal Rules of Civil Procedure ("Rule" or "Fed. R. Civ. P."). In support thereof, City Defendants respectfully show this Court as follows:

## I.  STATEMENT OF FACTS

In early October 2025, City staff became aware of a proposed use of the single-family residence Property as a sober living residence for multiple unrelated adults. After reviewing the applicable zoning regulations, the City Planner determined that the proposed use was not permitted within the R-2 zoning district. On October 15, 2025, the City issued a notice of zoning violation ("NOV") directing that the unpermitted use cease. At the time of the issuance of the NOV, no reasonable accommodation request had been formally submitted by the Plaintiffs. Furthermore, the notice was issued pursuant to the City's standard zoning enforcement authority.

On October 16, 2025, counsel for the Halcyon House, LLC, which was the operator of the property, asserted that the intended use was protected under federal fair housing and disability laws and requested that the City permit operation of the

residence as a reasonable accommodation. In response, the City paused enforcement and initiated its reasonable accommodation review process. The City provided the applicant with the accommodation application materials and engaged in an individualized review of the request, consistent with federal guidelines. On November 14, 2025, the applicant submitted a formal reasonable accommodation application ("Accommodation Request") seeking permission to operate an eight-resident sober living home at the property despite the limitations of the R-2 zoning district.

The City Council considered the Accommodation Request at its December 1, 2025 meeting and voted to deny the accommodation. On December 17, 2025, the City issued a written decision memorializing the denial and setting forth the City's rationale. On December 29, 2025, Plaintiffs filed their Complaint in the U.S. District Court for the Northern District of Georgia, against the City Defendants. Plaintiffs have also filed two separate appeals to Superior Court of Fulton County via Petitions for Review, as well as an Administrative Complaint with the United States Department of Housing and Urban Development ("HUD").

On March 16, 2026, City Defendants filed their Motion to Dismiss Plaintiffs' Amended Complaint. Plaintiffs filed their Response to Defendants' Motion on March 29, 2026. Proposed Intervenor Ryan Kelly filed his Motion to Intervene on

April 23, 2026, and attached a "Proposed Complaint" in support of his Motion.

## II.    <u>STANDARD OF REVIEW</u>

F.R.C.P. 24(a) "permits intervention as a matter of right if the applicant: (1) files a timely application; (2) asserts an interest relating to the property or transaction which is the subject of the action; (3) is so situated that disposition of the action may, as a practical matter, impair or impede its ability to protect the interest; and (4) has an interest that is not adequately represented by the existing parties to the suit." <u>Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta</u>, 224 F.R.D. 694, 699 (N.D. Ga. 2004). (*citing*, <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1308–09 (11th Cir.2004). However, "the failure to meet any of the requirements precludes intervention as of right." <u>Id.</u> (*citing*, <u>Howse v. S/V Canada Goose I</u>, 641 F.2d 317, 320 (5th Cir.1981). F.R.C.P. 24(b) states, "... the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Here, Kelly has not met the four elements to intervene as a right, nor has Kelly shown that permissive intervention is proper in this matter.

## III.    <u>ARGUMENTS AND CITATIONS TO AUTHORITY</u>

### A.  Kelly's Motion is not Timely

In Kelly's Motion to Intervene, Kelly states that he is the Owner of the

property located at 2041 English Lane, College Park, Georgia. Kelly further states that on September 30, 2025, he leased the property to Plaintiff Obsidian Nine, LLC, with Plaintiff Kai Thorup as the guarantee. (Motion to Intervene, pg. 2). Kelly acknowledges that he was aware of the City's cease and desist notice served upon the property on October 15, 2025. (Id.). As shown in the record as exhibits to Plaintiffs' Complaints filed with this Court, and Defendants' Motion to Dismiss, Kelly has had knowledge of the City's Notice to Plaintiffs due to the fact that Kelly appeared at the City's public hearings regarding the subject property. Therefore, Kelly could have joined the Plaintiffs in filing the Complaint in January of 2026; as well as the First Amended Complaint filed by Plaintiffs in February of 2026.

However, Kelly decided to wait until the City Defendants' Motion to Dismiss was submitted to the District Court Judge to file his Motion to Intervene. Kelly argues that his Motion is timely and does not disrupt the proceedings. However, that is not completely true. Kelly's Proposed Complaint asserts claims against the City Defendants that have not been alleged by the Plaintiffs. Therefore, if Kelly is allowed to intervene in this matter, litigation will expand in this matter to address the contractual claims asserted by Kelly in his Proposed Complaint. Although it true that discovery has not started in this matter, City Defendants remain adamant that Kelly had timely notice of his interests in this matter and therefore could have joined Plaintiffs in the filing of their Complaint several months ago.

**B. Interest in the Subject Matter of the Suit**

Kelly argues that he has "direct, substantial interest relating to the property and transactions already at issue." (Motion to Intervene, pg. 4). Specifically, Kelly argues that the actions of the City have "destroyed or impaired the value of the lease that was to be performed at the property. (Id.) The Eleventh Circuit has previously held that "the proposed intervenor must show that it has an interest in the subject matter of the suit, that its ability to protect that interest may be impaired by the disposition of the suit, and that existing parties in the suit cannot adequately protect that interest." Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc., 425 F.3d 1308, 1311 (11th Cir. 2005), (citing, Georgia v. United States Army Corps of Eng'rs, 302 F.3d 1242, 1249 (11th Cir. 2002). Plaintiffs assert in their Complaint that "the City has established a zoning and land use scheme that does not allow for sober housing for individuals in recovery from substance use that qualify as disabled under State and Federal Law anywhere within the City limits without special permission from the City or being subjected restrictions that effectively preclude sober housing. (Plaintiffs' First Amended Complaint).

The City Code at issue states, the R2 Zoning District permitted residential uses include Dwelling, Single-family, and Home Occupation Type 1. City of College Park, Ga., Municipal Code Appx. A, § 3.5 (2021) ("City Code"). This Code is made available to the public. It is the responsibility of the owner of a property to

ensure that he is abiding by the laws of the City, upon making a decision to lease their property. However, as an owner of the property at issue, Kelly's own actions caused him to violate the City's Code. Furthermore, Kelly had notice of said violations within 15 days of signing the lease with Kai Thorup; however, Kelly made the decision to continue to violate the City's Code. Now, Kelly wants this Court to allow him to intervene in a matter, to assert contractual issues that he is having with Plaintiffs. The discrimination claims asserted by the Plaintiffs are adequately represented by the interested Parties; therefore, it is not necessary for Kelly to intervene in this action.

The Eleventh Circuit Court has held that a legally protectable interest "is something more than an economic interest." Mt. Hawley Ins. Co. at 1308. (citing, United States v. South Fla. Water Mgmt. Dist., 922 F.2d 704, 710 (11th Cir.1991) (quotation marks and citation omitted). The Court in Hawley further opined "what is required is that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant. Thus, a legally protectable interest is an interest that derives from a legal right." Id. (quotation marks and citation omitted). Here, Kelly's interests are purely based on the lease agreement that he has with the Plaintiffs. Based upon the information provided by Kelly, the lease with the Plaintiffs includes a rental payment of $5,000.00 per month. Therefore, similar to the facts in Hawley, Kelly's interests here are purely economic. Based

upon Kelly's own admissions, he was aware of how Plaintiffs intended to use the property before the signing of the lease. Therefore, it was incumbent upon Kelly to ensure that such usage complied with the City's code. Kelly should not be allowed to now assert contractual claims against the City. Therefore, Kelly's interests are outside of the scope of the discrimination claims asserted by the Plaintiffs, and are purely economic.

### C. Impact Of The Litigation On Kelly's Ability To Protect His Interest.

Next, Kelly asserts that "if this action proceeds without Ryan Kelly, important factual and legal determinations about why the City acted, whether the property could lawfully be used as proposed, and whether the municipal defendants caused the shutdown of the contemplated housing operation may be made without the owner-side damages claim being before the Court." (Motion to Intervene, pg. 4). Kelly's assertions are not accurate. The Plaintiffs in this action have alleged that  the City violated the Fair Housing Act (FHA) by denying their request for an accommodation. Upon receiving the zoning violation from the City, Plaintiff Thorup responded to the City; however, Thorup did not include Kelly as an interested Party (Ex. A. Formal Request for Reasonable Accommodation).

In fact, upon submitting the Request for an Accommodation, Kelly was not listed as an interested Party on the face of the application. (Id.) Here, Kelly's intervention in the pending matter, asserting discriminatory claims is not necessary

nor required under Federal law. Kelly wants to intervene for purely economic reasons and asserts that City's Code violates certain rights of the Plaintiffs; as well as his contractual rights with the Plaintiffs. However, as stated above, Kelly's interest here are outside of the scope of the discrimination claims asserted by the Plaintiffs, and are purely economic. The Eleventh Circuit "has noted that the ability to separately litigate defeats the impairment element. Burke v. Ocwen Fin. Corp., 833 F. App'x 288, 292–93 (11th Cir. 2020); (citing, Worlds v. Dep't of Health & Rehab. Servs., State of Fla., 929 F.2d 591, 594 (11th Cir. 1991); *see also* Anderson Columbia Envtl., Inc. v. United States, 42 Fed. Cl. 880, 882 (1999) ("A prospective intervenor is also not likely to suffer impairment of its interests where it is free to assert its rights in a separate action.")). Therefore, Kelly has the ability to file separate litigation.

## D.  Plaintiffs' Adequately Represent Kelly's Interests In The Matter.

Kelly next argues that Plaintiffs "damages theories focus on operational losses, disability-rights injuries, and accommodation denials. Ryan Kelly seeks recovery for owner- specific injuries, including lost and unpaid rent and interference with the beneficial use of the property." (Motion to Intervene, pg. 5). The Court in Burke stated that "this court presume[s] that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate

objective as the party seeking intervention." <u>Burke v. Ocwen Fin. Corp.</u>, at 293; (*citing*, <u>Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.,</u> 983 F.2d 211, 215 (11th Cir. 1993). Here, the Plaintiffs' objective to have this Court decide whether the City's Code is discriminatory, and that such discrimination impacts their ability to operate a sober living facility in the City is clear. The intervention of Kelly is not necessary here. Therefore, Kelly's interest are adequately represented by the Plaintiffs in this action.

**E. Permissive Intervention is not Appropriate in this action.**

Kelly further argues that permissive intervention is appropriate here because his "proposed claims share common questions of law and fact with the existing action: what the City knew, why it acted, what it ordered, whether its actions were discriminatory or arbitrary, and what damages followed from those actions. (Motion to Intervene, pg. 5). In <u>Burke,</u> the Eleventh Circuit held that "[w]hen an appellant has other adequate means of asserting its rights, a charge of abuse of discretion in the denial of a motion for permissive intervention would appear to be almost untenable on its face." <u>Burke</u> at 294, (*citing*, Worlds, 929 F.2d at 595 n. 20 (quoting Korioth v. Brisco, 523 F.2d 1271, 1279 n. 25 (5th Cir. 1975)). Additionally, in <u>Sellers v. United States</u>, 709 F.2d 1469, 1472 (11th Cir. 1983), the Court held that "the intervention proposed would have expanded this litigation to include disputes about the ownership of property seized and the computation of Sellers' income tax

liability. There was no abuse of discretion in the court's denial of the motion to intervene." <u>Sellers v. United States, 1472.</u>

Here, and as stated by Defendants throughout this brief, Kelly's interests asserted in his Motion would expand the scope of the pending litigation. Kelly seeks to commingle his economic interests in the property with Plaintiff's interest to in the property to operate a sober living facility. This should not be allowed because Kelly has a proper remedy to seek claims against the City. Therefore, this Court should use its discretion and not allow Kelly to permissively intervene in this action.

## IV. <u>CONCLUSION</u>

For the reasons stated above, City Defendants respectfully request that the Court deny Kelly's Motion to Intervene.

Respectfully submitted, this 8th day of May, 2026.

**DENMARK ASHBY MATRICARDI LLC**

*/s/ Jacquita L. Parks*
WINSTON A. DENMARK
Georgia Bar No. 259551
JACQUITA L. PARKS
Georgia Bar No. 205537
WALLACE D. WASHINGTON
Geogia Bar No. 738900
EARLE TURNER
Georgia Bar No. 508360
100 Hartsfield Center Parkway, Suite 400
Atlanta, Georgia 30354
Phone: (770) 478-9950
Email: wdenmark@dam.law
Email: jparks@dam.law
Email: wwashington@dam.law
Email: eturner@dam.law
*Counsel for City Defendants*

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D) of the Northern District Court of Georgia, the Undersigned certifies that the above **CITY DEFENDANTS' RESPONSE IN OPPOSITION TO PROPOSED INTERVENOR RYAN KELLY'S MOTION TO INTERVENE** was prepared using Times New Roman, 14-point font in compliance with Local Rule 5.1.

Respectfully submitted, this 8th day of May, 2026.

**DENMARK ASHBY MATRICARDI, LLC**

<u>/s/ Jacquita L. Parks</u>
JACQUITA L. PARKS
Georgia Bar No. 205537

*Counsel for City Defendants*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the foregoing **CITY DEFENDANTS' RESPONSE IN OPPOSITION TO PROPOSED INTERVENOR RYAN KELLY'S MOTION TO INTERVENE** using CM/ECF filing system, which will automatically send e-mail notification of counsel of record.

Respectfully submitted, this 8h day of May 2026.

**DENMARK ASHBY MATRICARDI, LLC**

*/s/ Jacquita L. Parks*
JACQUITA L. PARKS
Georgia Bar No. 205537

*Counsel for City Defendants*

# Exhibit A

# REASONABLE ZONING ACCOMMODATION REQUEST APPLICATION
## <u>RESPONSE</u>

### SECTION I – APPLICANT INFORMATION

1. **Applicant Name / Organization:**  The Halcyon House LLC
2. **Contact Person:**  Kai Thorup, Owner
3. **Mailing Address:** 4413 Sublime Trail, Atlanta, GA 30349
4. **Phone Number:** (954) 873-4878
5. **Email Address:** kaithorup@gmail.com
6. **Relationship to Property / Proposed Use:**  The Halcyon House LLC leases the property as a private residence for adults living together as a single housekeeping unit.
   ◯ Owner  ◯  Operator  **X**  Tenant  ◯  Other:

### SECTION II – PROPERTY INFORMATION

1. Property Address:  2041 English Lane, College Park, GA 30337
2. **Parcel Number / Tax ID:** 14 016300010417
3. **Current Zoning District:** R-2 (Medium Density Residential)
4. **Current Use of Property (describe in detail, including number of residents, staff, and hours of operation):**

Private single-family residence intended to be used as a sober recovery residence for up to eight (8) adults in recovery from alcohol and substance abuse disorders, living together as a single housekeeping unit.  These individuals are persons with disabilities under the Fair Housing Act and the ADA.

The property is used solely as a dwelling.  It is not operated as a business or treatment facility.  There are no staff residing on site, no shift workers, and no on-site clinical or counseling services, programs, or scheduled "hours of operation."

When occupied, the residents will share kitchens, living areas, bathrooms, chores, meals, and household responsibilities in the same manner as any larger family residing in a six-bedroom home.  The requested use is residential in character and consistent with the City's own recognition that disabled persons may reside together in a family-like arrangement.

This application seeks reasonable accommodation to permit that family-style, disability-related living arrangement to occur in this single-family zoning district.

5.  **Is the property currently occupied?** ◯ Yes **X** No
    **If yes, provide number of residents and their disability status (disability verification is required in Section III):**

    N/A – The home is presently vacant and being prepared for occupancy by disabled adults in recovery. This request is submitted in advance of move-in so that the City's policies can be applied in a manner consistent with 42 U.S.C. § 3604(f).

**SECTION III – NATURE OF REQUESTED ACCOMMODATION**

1.  **Describe the specific accommodation being requested:**

    A reasonable accommodation under the Fair Housing Act and ADA to permit up to eight (8) unrelated adults with disabilities (individuals in recovery from alcohol and substance use disorders) to reside together as a single housekeeping unit within the single-family dwelling at 2041 English Lane.

    The accommodation is necessary because the City's current definition of "family" limits occupancy of unrelated persons to three, a restriction that directly prevents disabled individuals in recovery from residing in the type of stable, family-like setting required to maintain sobriety. Research consistently identifies a larger household size—generally eight (8) or more residents—as critical for safety, stability, peer accountability, and relapse prevention in non-clinical recovery homes. Smaller occupancies fail to provide the protective structure and mutual-support environment required by this disability class.

    This request does not alter the residential character of the neighborhood, convert the home to a business or treatment facility, or introduce staff or services. It seeks only a modification of the City's occupancy restrictions as applied to disabled individuals, consistent with federal law and case authority requiring local governments to make exceptions to unrelated-person caps. See City of Edmonds v. Oxford House, Inc., 514 U.S. 725 (1995).

    Finally, the City's zoning scheme classifies housing for persons with disabilities as a "Group Home" yet restricts such homes to limited districts, thereby displacing disabled residents by definition. The requested accommodation permits equal access to this dwelling pending revision of those facially discriminatory provisions, ensuring compliance with 42 U.S.C. § 3604(f)(3)(B).

2. **State the federal or state law that supports your request (e.g., FHA, ADA):**

Fair Housing Act (FHA)
42 U.S.C. §§ 3602(H);
3604(f)(1);
3604(f)(2);
3604(f)3)(A);
3604(f)3)(B);
3617

Americans with Disabilities Act, Title II
42 U.S.C. § 12132;
28 C.F.R. § 35.130(b)(7);

Section 504 of the Rehabilitation Act
29 U.S.C. § 794

HUD Regulations & Binding Guidance
24 C.F.R. § 100.201;
HUD/DOJ Joint Statement on Reasonable Accommodations (2004);
HUD/DOJ Joint Statement on Group Homes, Local Land Use, and the FHA (1999)

Georgia Fair Housing Act
O.C.G.A. §§ 8-3-201 to 8-3-204;
O.C.G.A. § 8-3-202(a)(7)(B);
O.C.G.A. § 8-3-201(10)


3. **Provide information regarding the disability or disabilities of all intended residents and explain how they qualify under the FHA or ADA.**
- **Documentation must be from a licensed healthcare professional or other credible source, summarizing the disability and the need for the requested accommodation.**
- **Do not submit full medical records. Summary letters or certifications are sufficient.**

The intended residents are adults with disabilities in recovery from substance-use disorders, including alcohol-use disorder, which are disabilities expressly protected under the Fair Housing Act, ADA, Section 504, and the Georgia Fair Housing Act. See 42 U.S.C. § 3602(h).

Residents in recovery require stable, family-like, peer-supported housing to maintain sobriety and avoid relapse, hospitalization, homelessness, or incarceration. This form of housing—commonly known as a recovery residence—is widely recognized in federal case law, HUD/DOJ guidance, Georgia case law, and peer-reviewed research as a medically appropriate housing model for individuals with this disability.

Consistent with HUD/DOJ guidance, disability verification will be provided confidentially by a licensed healthcare professional directly to the City's designated Fair Housing/ADA official upon request. No diagnoses, medical records, treatment information, or personal identifying information will be disclosed to the City.

All intended residents meet the statutory definition of disability and are legally entitled to the protections and reasonable accommodations mandated under federal and state law.

4. **Explain why the requested accommodation is necessary to provide equal opportunity in housing:**

The accommodation is necessary because the City's unrelated-occupant restriction and definition of "family," as applied to adults with disabilities in recovery from substance-use disorders, prevents them from living in the only type of housing that is clinically appropriate and federally recognized as essential to their disability.

A. Therapeutic Necessity (Critical Mass Requirement)

Evidence-based research establishes that recovery residences require a minimum occupancy— often eight or more residents—to achieve the "critical mass" necessary for stability, accountability, shared responsibilities, relapse-prevention, and financial feasibility. *(See, e.g., Jason et al., "Communal Living Settings for Adults Recovering From Substance Abuse"; Jason et al., "Counteracting NIMBY: Positive Effects of Greater Occupancy in Recovery Homes.")*

A limit of "three unrelated adults" is therapeutically detrimental and makes a recovery residence functionally impossible, directly denying disabled individuals equal housing opportunity.

B. Equal Opportunity Under the FHA

The FHA requires modification of local rules when necessary to afford individuals with disabilities an equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B).

Here, without the accommodation:
- Residents cannot live in a typical single-family neighborhood,
- Cannot access clinically appropriate housing,
- Cannot maintain a family-like environment essential to recovery, and
- Are categorically excluded from large areas of the City based solely on disability.

This is precisely the type of barrier the FHA prohibits.

C. The Requested Household Size is Still Residential

The home is a six-bedroom, four-bathroom, 4,500 square-foot single-family residence previously occupied by a nine-person family. The requested number of disabled residents falls well within the ordinary, foreseeable use of this home by any similarly sized family.

D. No Change to the Residential Character

The accommodation does not modify land use, intensity, traffic, noise, staffing, or operations. The household functions exactly like any other family in a single-family home.

5. **Explain why the requested accommodation must only occur within the specific zoning district as opposed to another zoning district that allows it as-of-right or conditionally:**

Federal law protects the right of individuals with disabilities to live in the dwelling and neighborhood of their choice. The Fair Housing Act does not permit municipalities to "steer" or confine disabled residents to particular zones. See 42 U.S.C. §§ 3604(f)(1)-(2). Courts consistently hold that an accommodation is necessary when it enables disabled individuals to live where they would otherwise choose to reside—not merely somewhere else within the city limits.

The specific home—a six-bedroom, four-bathroom, 4,500 square-foot residence with two kitchens, two living areas, and two laundry facilities—has the internal layout and safety characteristics required for adults in recovery from alcohol and substance use disorders to live together stably and functionally as a single housekeeping unit. Its location within a typical single-family neighborhood provides the quiet, normative, residential environment that supports ongoing recovery, as well as proximity to employment, transportation, medical providers, and community support resources.

Forcing the resident s to relocate to another district—particularly districts that are commercial, multifamily, or otherwise inconsistent with single-family living—would impose unnecessary and discriminatory barriers, destabilize the residents'' recovery environment, and deny them equal opportunity to live in the same type of neighborhood available to nondisabled household. The FHA does not allow local governments to dictate which neighborhoods disabled residents may access.

6. **Explain why the requested accommodation is reasonable and will not fundamentally alter the character or purpose of the zoning district:**

The requested accommodation is reasonable because the home will operate as a traditional single-family household. The residents share meals, responsibilities, daily routines, and household management, and function as a single integrated domestic unit. There will be no signage, no external alterations, no clients, no services provided on-site, and no activity generating traffic, or noise, or beyond that of a family living in a six-bedroom house.

Courts—including the U.S. Supreme Court—have long recognized that allowing unrelated disabled individuals to live together in a single-family residence is fully compatible with the purposes of a single-family zoning. The accommodation does not increase density, introduce commercial activity, or change the residential character of the district. It simple affords adults with a qualifying disability the same opportunity to use a home in a single-family neighborhood as any other household.

Accordingly, the requested accommodation neither alters the fundamental nature of the zoning district nor imposes any burden on the City. It is precisely the type of modest, non-disruptive adjustment the FHA requires.

7. **Describe any modifications, staffing, or operational procedures planned to comply with City Code or mitigate impact on the neighborhood:**

No staff resides at the home, and no treatment, counseling, outpatient services, case management, or commercial activity is conducted on the property. The residents live as a private household, not as participants in a program or supervised facility.

The home requires no physical modifications and operates in full compliance with all applicable City codes. Its use is indistinguishable from any other single-family residence of comparable size.

Any internal expectations such as maintaining cleanliness, completing ordinary household chores, respecting quiet hours, and being considerate of neighbors—are routine components of normal household living and are not clinical, supervisory, or programmatic in nature.

The household generates no traffic, noise, or operational footprint beyond that of a typical family living in a single-family home. No additional procedures or mitigation measures are necessary because the use does not create impacts beyond ordinary residential activity.

## SECTION IV – SUPPORTING INFORMATION

1. **Attach letters or certifications verifying disability and the need for accommodation (as described in Section III).**

Verification will be provided confidentially, upon request, by a licensed healthcare professional directly to the City's designated ADA/Fair Housing official. Consistent with federal law and HUD/DOJ guidance, no medical records, diagnoses, or resident-identifying information will be disclosed to the City.

2. **Provide site plan, floor plan, and occupancy plan showing number of bedrooms, common areas, and maximum residents.**

The property is a standard single-family residence with six bedrooms and four bathrooms. No structural modifications, additions, or alterations are proposed or required. If the City requires a simple floor layout, a basic diagram identifying common areas and bedroom locations can be provided, without labeling individual residents or disclosing private living arrangements.

3. **Attach any policies, operational manuals, or rules of conduct for residents and staff:**

There are no staff, no services, and no institutional or programmatic operations associated with the home.

The residents will occupy the dwelling as a traditional single-family household. Any internal household expectations—such as cleanliness, shared chores, and respectful conduct—are ordinary aspects of private residential living and are not treatment-related or subject to municipal oversight.

4.  **Provide any previous correspondence with City officials regarding this property or proposed use.**

Any relevant correspondence with City officials concerning this property or its proposed use has been or will be provided upon request.  No additional materials exist at this time.

### SECTION V – IMPACT ASSESSMENT

1.  **Explain potential impacts on surrounding properties and how you plan to minimize them (traffic, noise, parking, safety, etc.):**

The use of the property is indistinguishable from that of any traditional single-family residence. There is no commercial activity, no signage, no deliveries or traffic beyond what is typical for a private household, and no services offered on-site.

Parking occurs within the property boundaries, consistent with neighborhood norms.  The residents maintain the home as a quiet, stable, residential dwelling with no adverse external impacts.

2.  **Estimate the number of daily staff, visitors, and service providers at the property.**

There are no staff, no rotating personnel, and no service providers operating at or visiting the home.

Visitors will be comparable to those of any ordinary single-family household—occasional friends, family or guests in numbers typical for a private residence.

3.  **Describe any safety, security, or monitoring protocols that will be implemented:**

Residents will follow ordinary household safety practices consistent with any private home.  There is no supervision, no on-site staff, and no institutional oversight.  The home functions as a standard single-family household.

**SECTION VI – DECLARATION**

I hereby certify that the information provided in this application is true, complete, and accurate to the best of my knowledge. I understand that failure to provide thorough responses and supporting documentation may result in non-review of this request. I understand that all documentation provided will be kept confidential and used solely for the purpose of evaluating this request.

Signature of Applicant / Authorized Representative: _THE HALCYON HOUSE LLC by _____ , ITS PRESIDENT_

Name: _KAI THORUP HALCYON HOUSE LLC by ITS PRESIDENT_          Date: _11 - 14 . 2025_

For City Use Only:

- Date Received: _____
- Reviewed By: _____
- Application Complete: __ Yes __ No
- Additional Information Requested: __ Yes __ No