FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 2 0 2026

KEVIN R. WEIMER, Clerk
By: _____ Deputy Clerk



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

KAI THORUP, THE HALCYON HOUSE LLC, )
and OBSIDIAN NINE LLC, )
                               )
    Plaintiffs, )
                               )
v. )   Civil Action No.
                             )   1:25-cv-07429-TWT
CITY OF COLLEGE PARK, BIANCA MOTLEY )
BROOM, JAMELLE E. McKENZIE, )
RODERICK GAY, TRACIE ARNOLD, )
and JOSEPH CARN a/k/a JOE CARN, )
                               )
    Defendants. )
_____ )

## PROPOSED INTERVENOR RYAN KELLY'S REPLY IN SUPPORT OF HIS MOTION TO INTERVENE

### INTRODUCTION

The City asks the Court to deny intervention by treating this case as though it concerns only the operator-plaintiffs and not the property owner whose property is the object of the challenged municipal action. That framing is wrong. This case concerns the City's enforcement, accommodation, and land-use decisions directed at 2041 English Lane. Ryan Kelly personally owns that property. His proposed

1

claims arise from the same municipal acts, same property, and same failed housing transaction already before the Court.

Kelly is not seeking to convert this action into a private landlord-tenant collection case. The lease, rent delinquency, and later vacatur matter because they show how the City's challenged conduct allegedly injured Kelly's individual property and housing-related interests. The proposed claims against the City arise under the Fair Housing Act and 42 U.S.C. § 1983, not breach of lease.

The City's opposition fails on every Rule 24 element. First, the motion is timely. The City measures timeliness from Kelly's knowledge that a zoning dispute existed, but Eleventh Circuit law asks when the movant knew or reasonably should have known that his own interest in this litigation needed protection, evaluated practically and with prejudice as the most important consideration. The tenant remained in possession until March 23, 2026; rent delinquency did not terminate the tenancy, return possession, or fix Kelly's owner-side injury; no formal written notice of surrender, abandonment, or termination was provided before vacatur despite requests for clarification; and the City itself acknowledges that two Superior Court Petitions for Review and a HUD complaint remained pending after the accommodation denial. Kelly moved on April 23, 2026, thirty-one days after vacatur, while discovery had not begun and before any merits ruling.

Second, Kelly has a direct, legally protectable interest because he personally owns the very property and claims injury from the very transaction at issue. Third, disposition of this case may practically impair his ability to protect that interest. Fourth, the operator-plaintiffs do not adequately represent Kelly's distinct individual owner-side damages and property interests. At minimum, permissive intervention is appropriate.

Kelly also clarifies that he seeks intervention only in his individual capacity. He does not seek to represent 2041 English Lane, LLC or recover on behalf of that entity. If the Court sees any ambiguity in the proposed complaint, the appropriate remedy is leave to file a conforming individual-capacity complaint, not denial of intervention.

**ARGUMENT**

**I. THE MOTION IS TIMELY UNDER RULE 24'S PRACTICAL, PREJUDICE-FOCUSED TEST.**

Timeliness is not decided by the first date a proposed intervenor learns that some related dispute exists. The Eleventh Circuit considers: (1) the length of time the movant knew or reasonably should have known of his interest in the case before moving; (2) prejudice to existing parties from the delay; (3) prejudice to the movant if intervention is denied; and (4) unusual circumstances. Comm'r, Ala.

3

Dep't of Corr. v. Advance Local Media, LLC, 918 F.3d 1161, 1171 (11th Cir. 2019). The Eleventh Circuit further holds that mere knowledge of litigation, without appreciation of its adverse effect on one's interests, does not preclude intervention, and that prejudice from delay is the most important timeliness consideration. Id. at 1171-72.

**A. Knowledge of the zoning dispute did not make intervention immediately necessary.**

The City argues that Kelly knew of the October 15, 2025 notice, attended public proceedings, and therefore could have joined earlier. Opp. at 5. That argument conflates three different things: knowledge of a zoning dispute, knowledge of some risk to property interests, and practical knowledge that intervention in this federal case was necessary to protect a distinct individual owner-side claim. Rule 24 does not collapse those concepts.

Before March 23, Kelly's owner-side injury was still developing and potentially avoidable. The tenant remained in possession. Supp. Decl. para. 4, 6, 20 & Ex. G. Rent delinquency did not terminate the tenancy, restore possession to Kelly, or release the property from the lease relationship. Supp. Decl. paras. 5-8. The tenant did not provide a formal written notice of surrender, abandonment, termination, or relinquishment of the leasehold before vacating, despite requests

4

for clarification. Id. paras. 7-8. Thus, although payment problems existed, the tenancy itself had not become a completed loss.

The tenant's March 23, 2026 vacatur materially changed the posture. Once the tenant vacated, Kelly's individual owner-side injury became practically unavoidable in a way that made intervention necessary to protect his interest in the federal case concerning the same property and same municipal conduct. Kelly moved thirty-one days later. That is prompt, not dilatory.

**B. The City's own filing confirms that additional remedial proceedings had been filed.**

The City's own Statement of Facts states that Plaintiffs filed two separate Superior Court Petitions for Review and a HUD administrative complaint. Opp. at 3. That admission supports timeliness. While those proceedings remained pending and the tenant remained in possession, there remained a realistic possibility that the challenged accommodation denial or enforcement posture could be reversed, modified, or otherwise remedied. The contemplated use and tenancy could still have been preserved.

That circumstance explains why immediate federal intervention was not practically required in January or February. Kelly did not wait while the case approached trial or while completed discovery created prejudice. He waited while

the tenant still occupied the property, while the lease relationship had not been surrendered or terminated, and while existing review avenues might still preserve the housing use. Once the tenant vacated on March 23, he acted within thirty-one days.

**C. The City identifies no prejudice caused by delay.**

The City concedes that discovery had not begun. Opp. at 5. No scheduling order had been disrupted. No trial date was jeopardized. No merits ruling had issued. The City identifies no lost witness, unavailable document, closed deadline, or litigation step that would have occurred differently had Kelly moved earlier.

The City's real complaint is that intervention would require it to answer Kelly's claims. That is not the relevant prejudice. For intervention of right, the prejudice considered is prejudice caused by the movant's delay, not ordinary litigation burden from having another party in the case. Loyd v. Ala. Dep't of Corr., 176 F.3d 1336, 1344 n.8 (11th Cir. 1999). Because the City shows no delay prejudice, the most important timeliness factor favors intervention.

**D. Denial would prejudice Kelly.**

Denying intervention would force Kelly to litigate separately after this Court has already addressed the legality of the City's conduct toward the very property he owns. That creates practical prejudice: duplicative litigation, inconsistent

determinations, and adverse factual or legal conclusions on issues central to Kelly's individual claims. Rule 24 is designed to prevent that practical impairment where intervention will allow related disputes to be resolved in one action.

## II. KELLY HAS A DIRECT, SUBSTANTIAL, LEGALLY PROTECTABLE INTEREST IN THE PROPERTY AND TRANSACTION AT ISSUE.

The City relies on Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc., 425 F.3d 1308 (11th Cir. 2005), to characterize Kelly's interest as merely economic. Opp. at 6-8. Mt. Hawley does not fit. There, a wrongful-death claimant attempted to intervene in an insurance coverage dispute because insurance proceeds might later satisfy a possible judgment. 425 F.3d at 1311-12. That was a remote and contingent interest in a fund, not an interest in the policy or property being adjudicated.

Kelly's interest is direct. He personally owns 2041 English Lane. Supp. Decl. para. 2 & Ex. E. The City's challenged conduct was directed at 2041 English Lane. The existing action seeks rulings about whether the City's enforcement and accommodation decisions concerning 2041 English Lane were lawful. Kelly alleges that those same acts impaired his use, value, rental opportunity, and housing-related property interests. Rule 24(a)(2) expressly protects a person who

claims an interest relating to the property or transaction that is the subject of the action.

The City's 'purely economic' argument is also contradicted by its own records. City-produced emails show that, before formal enforcement, the City Planner asked: 'Can we cite the property owner and Halcyon House with a zoning code violation?' Supp. Decl. para. 14 & Ex. A. Another City-produced email states that, 'at the minimum, zoning code violations should be issued to the property owner and the operator, who is Halcyon House.' Supp. Decl. para. 15 & Ex. B. The City attorney's enforcement discussion also referenced administrative penalties and injunctive relief if voluntary compliance was not achieved. Supp. Decl. para. 16 & Ex. C. The formal notice then threatened civil penalties of up to $1,000 per day and legal action seeking a mandatory injunction. Supp. Decl. para. 17 & Ex. D.

These records defeat the claim that Kelly's interest is merely derivative or incidental. The City contemplated enforcement against the property owner, not just against the operator. That makes Kelly's interest directly related to the property and transaction in dispute. The threatened penalties and injunctive relief were not abstract financial consequences; they were part of a municipal enforcement posture aimed at the property Kelly owns.

8

This case is closer to Stone v. First Union Corp., 371 F.3d 1305 (11th Cir. 2004), and Chiles v. Thornburgh, 865 F.2d 1197 (11th Cir. 1989), than to Mt. Hawley. Where a proposed intervenor claims an interest in the very property and very transaction at issue, the Eleventh Circuit recognizes a practical, protectable interest sufficient for Rule 24. Stone, 371 F.3d at 1310; Chiles, 865 F.2d at 1214.

The City's assertion that Kelly should have verified zoning compliance before leasing the property is a merits defense, not a Rule 24 threshold objection. Opp. at 7-8. The existing plaintiffs allege that the City's enforcement position and ordinance violate federal law. Kelly's proposed claims depend on the same disputed legal and factual issues. The Court need not decide those merits issues to determine that Kelly has a protectable interest in the property and transaction being litigated.

The Fair Housing Act also confirms that Kelly's interest is legally cognizable. The FHA protects an 'aggrieved person' and prohibits discrimination because of the handicap of a person residing in or intending to reside in a dwelling, or a person associated with such persons. 42 U.S.C. §§ 3602(i), 3604(f). The Supreme Court recognizes that financial injuries can fall within the FHA's zone of interests when tied to a discriminatory housing practice. Bank of Am. Corp. v. City of Miami, 581 U.S. 189, 197-99 (2017). Kelly alleges a direct injury to his own

9

property and housing transaction arising from the City's alleged discrimination against the intended sober-living residents and operators.

## III. DISPOSITION OF THIS CASE MAY PRACTICALLY IMPAIR KELLY'S ABILITY TO PROTECT HIS INTEREST.

The City says Kelly can simply file a separate action. Opp. at 8-9. But formal availability of another lawsuit does not defeat Rule 24 impairment where the pending case may practically impair the proposed intervenor's interests. Stone is controlling: potential stare decisis or persuasive effects can supply the practical disadvantage warranting intervention where the movant's interest is tied to the same property and same transaction. 371 F.3d at 1310.

This case will decide issues central to Kelly's proposed claims: why the City acted, whether the City's enforcement and accommodation decisions concerning 2041 English Lane were lawful, whether the City's actions were discriminatory or arbitrary, and whether those actions caused the contemplated sober-living use to fail. If those issues are resolved without Kelly, later litigation may be practically impaired even if Kelly is not formally bound by every ruling.

The City's observation that Kelly was not listed on the accommodation application does not matter. Opp. at 8. Kelly's interest arises from ownership of the targeted property and alleged injury from the same municipal conduct. The City

itself says Kelly attended public proceedings concerning the property. Opp. at 5.

That fact confirms his connection to the dispute; it does not eliminate impairment.

## IV. THE EXISTING PLAINTIFFS DO NOT ADEQUATELY REPRESENT KELLY'S INDIVIDUAL OWNER-SIDE INTERESTS.

The City argues that plaintiffs adequately represent Kelly because they seek a ruling that the City's conduct was unlawful. Opp. at 9-10. The burden to show inadequate representation is minimal; the movant need only show that representation of his interest may be inadequate. Stone, 371 F.3d at 1311; Georgia v. U.S. Army Corps of Eng'rs, 302 F.3d 1242, 1255 (11th Cir. 2002). Parties may share some liability arguments while having different damages, incentives, and settlement positions.

The operator-plaintiffs seek to vindicate the right to operate sober-living housing and recover operator-side losses. Kelly's interest is different: personal injury to his property ownership, use, rental opportunity, and owner-side damages after the tenant vacated. The existing plaintiffs have no duty to prove those damages, preserve those interests, or litigate the case in a way that maximizes Kelly's individual recovery.

The City's own opposition proves the point. It repeatedly argues that Kelly's interests are outside the plaintiffs' claims, purely economic, contractual, or

otherwise distinct. Opp. at 5, 8, 10-11. The City cannot simultaneously argue that Kelly's interests are outside the case and that the existing plaintiffs adequately represent them.

## V. AT MINIMUM, PERMISSIVE INTERVENTION IS APPROPRIATE.

If the Court concludes that intervention of right is not required, permissive intervention should be granted. Kelly's proposed claims share common questions of law and fact with the main action: what the City knew, why it acted, whether its zoning and accommodation decisions violated federal law, whether the challenged conduct caused the proposed use at 2041 English Lane to fail, and what damages flowed from those actions. These questions are already central to the case.

Permissive intervention will not unduly delay or prejudice the existing parties. The case is at the pleading stage, discovery has not begun, Kelly moved thirty-one days after vacatur, and he is prepared to proceed on the existing schedule. Resolving the operator-side and owner-side consequences of the same challenged municipal conduct in one action promotes judicial economy and reduces inconsistent rulings.

## VI. KELLY SEEKS INTERVENTION ONLY IN HIS INDIVIDUAL CAPACITY; ANY AMBIGUITY SHOULD BE CURED, NOT USED TO DENY INTERVENTION.

Kelly clarifies that he seeks intervention only as Ryan Kelly, individually. He does not purport to represent 2041 English Lane, LLC, does not seek relief on behalf of that entity, and does not ask the Court to adjudicate claims belonging solely to that entity. Supp. Decl. para. 3. His proposed intervention is based on his personal ownership and direct injury to his own property, use, rental opportunity, and housing-related interests.

If the Court concludes that any language in the proposed complaint could be read to assert an entity claim or otherwise creates ambiguity, denial is unnecessary. Rule 24(c)'s pleading requirement is designed to give notice of the claim for which intervention is sought; technical pleading defects that cause no prejudice should not defeat intervention. See Loyd, 176 F.3d at 1344 n.8. Kelly respectfully requests leave to file a conforming complaint limited expressly to his individual claims if the Court deems that necessary.

**CONCLUSION**

For these reasons, Kelly respectfully requests that the Court grant his Motion to Intervene and direct that his Complaint in Intervention be filed. In the alternative, Kelly requests permissive intervention or leave to file a conforming individual-capacity complaint in intervention.

Respectfully submitted this 18th day of May, 2026.

/s/ Ryan Kelly
Ryan Kelly
1739 Saulter Rd.
Homewood, AL 35209
sigokelly@gmail.com
334-328-8419
Proposed Intervenor, pro se

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I certify that this brief was prepared in Times New Roman 14-point font in compliance with Local Rule 5.1.

Respectfully submitted this 18 day of May, 2026.

/s/ Ryan Kelly
Ryan Kelly
Proposed Intervenor, pro se

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of May, 2026, I served the foregoing Proposed Intervenor Ryan Kelly's Reply in Support of Motion to Intervene and Supplemental Declaration with exhibits by U.S. Mail, postage prepaid, upon counsel of record at the addresses listed below:

Denmark Ashby Matricardi LLC, Attn: Winston A. Denmark, Jacquita L. Parks, Wallace D. Washington, and Earle Turner, 100 Hartsfield Center Parkway, Suite 400, Atlanta, GA 30354;

Ian Neubauer, Esq., 650 Saddle Creek Circle, Roswell, GA 30076;

Andrew J. Tine, Esq., Law Office of Andrew J. Tine, 18 Maple Avenue, Suite 267, Barrington, RI 02806.

/s/ Ryan Kelly
Ryan Kelly
Proposed Intervenor, pro se