FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

**MAY 2 6 2026**

KEVIN P WEIMER, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| KAI THORUP, THE HALCYON HOUSE LLC, and OBSIDIAN NINE LLC,<br><br>  Plaintiffs,<br><br>v.<br><br>CITY OF COLLEGE PARK, BIANCA MOTLEY BROOM, JAMELLE E. McKENZIE, RODERICK GAY, TRACIE ARNOLD, and JOSEPH CARN a/k/a JOE CARN,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)  1:25-cv-07429-TWT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PROPOSED INTERVENOR RYAN KELLY'S REPLY IN SUPPORT OF HIS MOTION TO INTERVENE

## INTRODUCTION

The City asks the Court to deny intervention by treating this case as though it concerns only the operator-plaintiffs and not the property owner whose property is the object of the challenged municipal action. That framing is wrong. This case concerns the City's enforcement, accommodation, and land-use decisions directed at 2041 English Lane. Ryan Kelly personally owns that property. His proposed

1

claims arise from the same municipal acts, same property, and same failed housing transaction already before the Court.

Kelly is not seeking to convert this action into a private landlord-tenant collection case. The lease, rent delinquency, and later vacatur matter because they show how the City's challenged conduct allegedly injured Kelly's individual property and housing-related interests. The proposed claims against the City arise under the Fair Housing Act and 42 U.S.C. § 1983, not breach of lease.

The City's opposition fails on every Rule 24 element. First, the motion is timely. The City measures timeliness from Kelly's knowledge that a zoning dispute existed, but Eleventh Circuit law asks when the movant knew or reasonably should have known that his own interest in this litigation needed protection, evaluated practically and with prejudice as the most important consideration. The tenant remained in possession until March 23, 2026; rent delinquency did not terminate the tenancy, return possession, or fix Kelly's owner-side injury; no formal written notice of surrender, abandonment, or termination was provided before vacatur despite requests for clarification; and the City itself acknowledges that two Superior Court Petitions for Review and a HUD complaint remained pending after the accommodation denial. Kelly moved on April 23, 2026, thirty-one days after vacatur, while discovery had not begun and before any merits ruling.

2

Second, Kelly has a direct, legally protectable interest because he personally owns the very property and claims injury from the very transaction at issue. Third, disposition of this case may practically impair his ability to protect that interest. Fourth, the operator-plaintiffs do not adequately represent Kelly's distinct individual owner-side damages and property interests. At minimum, permissive intervention is appropriate.

Kelly also clarifies that he seeks intervention only in his individual capacity. He does not seek to represent 2041 English Lane, LLC or recover on behalf of that entity. If the Court sees any ambiguity in the proposed complaint, the appropriate remedy is leave to file a conforming individual-capacity complaint, not denial of intervention.

**ARGUMENT**

**I. THE MOTION IS TIMELY UNDER RULE 24'S PRACTICAL, PREJUDICE-FOCUSED TEST.**

Timeliness is not decided by the first date a proposed intervenor learns that some related dispute exists. The Eleventh Circuit considers: (1) the length of time the movant knew or reasonably should have known of his interest in the case before moving; (2) prejudice to existing parties from the delay; (3) prejudice to the movant if intervention is denied; and (4) unusual circumstances. Comm'r, Ala.

3

Dep't of Corr. v. Advance Local Media, LLC, 918 F.3d 1161, 1171 (11th Cir. 2019). The Eleventh Circuit further holds that mere knowledge of litigation, without appreciation of its adverse effect on one's interests, does not preclude intervention, and that prejudice from delay is the most important timeliness consideration. Id. at 1171-72.

**A. Knowledge of the zoning dispute did not make intervention immediately necessary.**

The City argues that Kelly knew of the October 15, 2025 notice, attended public proceedings, and therefore could have joined earlier. Opp. at 5. That argument conflates three different things: knowledge of a zoning dispute, knowledge of some risk to property interests, and practical knowledge that intervention in this federal case was necessary to protect a distinct individual owner-side claim. Rule 24 does not collapse those concepts.

Before March 23, Kelly's owner-side injury was still developing and potentially avoidable. The tenant remained in possession. Supp. Decl. para. 4, 6, 20 & Ex. G. Rent delinquency did not terminate the tenancy, restore possession to Kelly, or release the property from the lease relationship. Supp. Decl. paras. 5-8. The tenant did not provide a formal written notice of surrender, abandonment, termination, or relinquishment of the leasehold before vacating, despite requests

4

for clarification. Id. paras. 7-8. Thus, although payment problems existed, the tenancy itself had not become a completed loss.

The tenant's March 23, 2026 vacatur materially changed the posture. Once the tenant vacated, Kelly's individual owner-side injury became practically unavoidable in a way that made intervention necessary to protect his interest in the federal case concerning the same property and same municipal conduct. Kelly moved thirty-one days later. That is prompt, not dilatory.

**B. The City's own filing confirms that additional remedial proceedings had been filed.**

The City's own Statement of Facts states that Plaintiffs filed two separate Superior Court Petitions for Review and a HUD administrative complaint. Opp. at 3. That admission supports timeliness. While those proceedings remained pending and the tenant remained in possession, there remained a realistic possibility that the challenged accommodation denial or enforcement posture could be reversed, modified, or otherwise remedied. The contemplated use and tenancy could still have been preserved.

That circumstance explains why immediate federal intervention was not practically required in January or February. Kelly did not wait while the case approached trial or while completed discovery created prejudice. He waited while

the tenant still occupied the property, while the lease relationship had not been surrendered or terminated, and while existing review avenues might still preserve the housing use. Once the tenant vacated on March 23, he acted within thirty-one days.

## C. The City identifies no prejudice caused by delay.

The City concedes that discovery had not begun. Opp. at 5. No scheduling order had been disrupted. No trial date was jeopardized. No merits ruling had issued. The City identifies no lost witness, unavailable document, closed deadline, or litigation step that would have occurred differently had Kelly moved earlier.

The City's real complaint is that intervention would require it to answer Kelly's claims. That is not the relevant prejudice. For intervention of right, the prejudice considered is prejudice caused by the movant's delay, not ordinary litigation burden from having another party in the case. Loyd v. Ala. Dep't of Corr., 176 F.3d 1336, 1344 n.8 (11th Cir. 1999). Because the City shows no delay prejudice, the most important timeliness factor favors intervention.

## D. Denial would prejudice Kelly.

Denying intervention would force Kelly to litigate separately after this Court has already addressed the legality of the City's conduct toward the very property he owns. That creates practical prejudice: duplicative litigation, inconsistent

determinations, and adverse factual or legal conclusions on issues central to Kelly's individual claims. Rule 24 is designed to prevent that practical impairment where intervention will allow related disputes to be resolved in one action.

## II. KELLY HAS A DIRECT, SUBSTANTIAL, LEGALLY PROTECTABLE INTEREST IN THE PROPERTY AND TRANSACTION AT ISSUE.

The City relies on Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc., 425 F.3d 1308 (11th Cir. 2005), to characterize Kelly's interest as merely economic. Opp. at 6-8. Mt. Hawley does not fit. There, a wrongful-death claimant attempted to intervene in an insurance coverage dispute because insurance proceeds might later satisfy a possible judgment. 425 F.3d at 1311-12. That was a remote and contingent interest in a fund, not an interest in the policy or property being adjudicated.

Kelly's interest is direct. He personally owns 2041 English Lane. Supp. Decl. para. 2 & Ex. E. The City's challenged conduct was directed at 2041 English Lane. The existing action seeks rulings about whether the City's enforcement and accommodation decisions concerning 2041 English Lane were lawful. Kelly alleges that those same acts impaired his use, value, rental opportunity, and housing-related property interests. Rule 24(a)(2) expressly protects a person who

7

claims an interest relating to the property or transaction that is the subject of the action.

The City's 'purely economic' argument is also contradicted by its own records. City-produced emails show that, before formal enforcement, the City Planner asked: 'Can we cite the property owner and Halcyon House with a zoning code violation?' Supp. Decl. para. 14 & Ex. A. Another City-produced email states that, 'at the minimum, zoning code violations should be issued to the property owner and the operator, who is Halcyon House.' Supp. Decl. para. 15 & Ex. B. The City attorney's enforcement discussion also referenced administrative penalties and injunctive relief if voluntary compliance was not achieved. Supp. Decl. para. 16 & Ex. C. The formal notice then threatened civil penalties of up to $1,000 per day and legal action seeking a mandatory injunction. Supp. Decl. para. 17 & Ex. D.

These records defeat the claim that Kelly's interest is merely derivative or incidental. The City contemplated enforcement against the property owner, not just against the operator. That makes Kelly's interest directly related to the property and transaction in dispute. The threatened penalties and injunctive relief were not abstract financial consequences; they were part of a municipal enforcement posture aimed at the property Kelly owns.

8

This case is closer to Stone v. First Union Corp., 371 F.3d 1305 (11th Cir. 2004), and Chiles v. Thornburgh, 865 F.2d 1197 (11th Cir. 1989), than to Mt. Hawley. Where a proposed intervenor claims an interest in the very property and very transaction at issue, the Eleventh Circuit recognizes a practical, protectable interest sufficient for Rule 24. Stone, 371 F.3d at 1310; Chiles, 865 F.2d at 1214.

The City's assertion that Kelly should have verified zoning compliance before leasing the property is a merits defense, not a Rule 24 threshold objection. Opp. at 7-8. The existing plaintiffs allege that the City's enforcement position and ordinance violate federal law. Kelly's proposed claims depend on the same disputed legal and factual issues. The Court need not decide those merits issues to determine that Kelly has a protectable interest in the property and transaction being litigated.

The Fair Housing Act also confirms that Kelly's interest is legally cognizable. The FHA protects an 'aggrieved person' and prohibits discrimination because of the handicap of a person residing in or intending to reside in a dwelling, or a person associated with such persons. 42 U.S.C. §§ 3602(i), 3604(f). The Supreme Court recognizes that financial injuries can fall within the FHA's zone of interests when tied to a discriminatory housing practice. Bank of Am. Corp. v. City of Miami, 581 U.S. 189, 197-99 (2017). Kelly alleges a direct injury to his own

property and housing transaction arising from the City's alleged discrimination against the intended sober-living residents and operators.

## III. DISPOSITION OF THIS CASE MAY PRACTICALLY IMPAIR KELLY'S ABILITY TO PROTECT HIS INTEREST.

The City says Kelly can simply file a separate action. Opp. at 8-9. But formal availability of another lawsuit does not defeat Rule 24 impairment where the pending case may practically impair the proposed intervenor's interests. Stone is controlling: potential stare decisis or persuasive effects can supply the practical disadvantage warranting intervention where the movant's interest is tied to the same property and same transaction. 371 F.3d at 1310.

This case will decide issues central to Kelly's proposed claims: why the City acted, whether the City's enforcement and accommodation decisions concerning 2041 English Lane were lawful, whether the City's actions were discriminatory or arbitrary, and whether those actions caused the contemplated sober-living use to fail. If those issues are resolved without Kelly, later litigation may be practically impaired even if Kelly is not formally bound by every ruling.

The City's observation that Kelly was not listed on the accommodation application does not matter. Opp. at 8. Kelly's interest arises from ownership of the targeted property and alleged injury from the same municipal conduct. The City

10

itself says Kelly attended public proceedings concerning the property. Opp. at 5. That fact confirms his connection to the dispute; it does not eliminate impairment.

## IV. THE EXISTING PLAINTIFFS DO NOT ADEQUATELY REPRESENT KELLY'S INDIVIDUAL OWNER-SIDE INTERESTS.

The City argues that plaintiffs adequately represent Kelly because they seek a ruling that the City's conduct was unlawful. Opp. at 9-10. The burden to show inadequate representation is minimal; the movant need only show that representation of his interest may be inadequate. Stone, 371 F.3d at 1311; Georgia v. U.S. Army Corps of Eng'rs, 302 F.3d 1242, 1255 (11th Cir. 2002). Parties may share some liability arguments while having different damages, incentives, and settlement positions.

The operator-plaintiffs seek to vindicate the right to operate sober-living housing and recover operator-side losses. Kelly's interest is different: personal injury to his property ownership, use, rental opportunity, and owner-side damages after the tenant vacated. The existing plaintiffs have no duty to prove those damages, preserve those interests, or litigate the case in a way that maximizes Kelly's individual recovery.

The City's own opposition proves the point. It repeatedly argues that Kelly's interests are outside the plaintiffs' claims, purely economic, contractual, or

11

otherwise distinct. Opp. at 5, 8, 10-11. The City cannot simultaneously argue that Kelly's interests are outside the case and that the existing plaintiffs adequately represent them.

## V. AT MINIMUM, PERMISSIVE INTERVENTION IS APPROPRIATE.

If the Court concludes that intervention of right is not required, permissive intervention should be granted. Kelly's proposed claims share common questions of law and fact with the main action: what the City knew, why it acted, whether its zoning and accommodation decisions violated federal law, whether the challenged conduct caused the proposed use at 2041 English Lane to fail, and what damages flowed from those actions. These questions are already central to the case.

Permissive intervention will not unduly delay or prejudice the existing parties. The case is at the pleading stage, discovery has not begun, Kelly moved thirty-one days after vacatur, and he is prepared to proceed on the existing schedule. Resolving the operator-side and owner-side consequences of the same challenged municipal conduct in one action promotes judicial economy and reduces inconsistent rulings.

## VI. KELLY SEEKS INTERVENTION ONLY IN HIS INDIVIDUAL CAPACITY; ANY AMBIGUITY SHOULD BE CURED, NOT USED TO DENY INTERVENTION.

12

Kelly clarifies that he seeks intervention only as Ryan Kelly, individually. He does not purport to represent 2041 English Lane, LLC, does not seek relief on behalf of that entity, and does not ask the Court to adjudicate claims belonging solely to that entity. Supp. Decl. para. 3. His proposed intervention is based on his personal ownership and direct injury to his own property, use, rental opportunity, and housing-related interests.

If the Court concludes that any language in the proposed complaint could be read to assert an entity claim or otherwise creates ambiguity, denial is unnecessary. Rule 24(c)'s pleading requirement is designed to give notice of the claim for which intervention is sought; technical pleading defects that cause no prejudice should not defeat intervention. See Loyd, 176 F.3d at 1344 n.8. Kelly respectfully requests leave to file a conforming complaint limited expressly to his individual claims if the Court deems that necessary.

**CONCLUSION**

For these reasons, Kelly respectfully requests that the Court grant his Motion to Intervene and direct that his Complaint in Intervention be filed. In the alternative, Kelly requests permissive intervention or leave to file a conforming individual-capacity complaint in intervention.

Respectfully submitted this 18th day of May, 2026.


/s/ Ryan Kelly
Ryan Kelly
1739 Saulter Rd.
Homewood, AL 35209
sigokelly@gmail.com
334-328-8419
Proposed Intervenor, pro se


## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I certify that this brief was prepared in Times New Roman 14-point font in compliance with Local Rule 5.1.

Respectfully submitted this 18 day of May, 2026.

/s/ Ryan Kelly
Ryan Kelly
Proposed Intervenor, pro se

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of May, 2026, I served the foregoing Proposed Intervenor Ryan Kelly's Reply in Support of Motion to Intervene and Supplemental Declaration with exhibits by U.S. Mail, postage prepaid, upon counsel of record at the addresses listed below:

Denmark Ashby Matricardi LLC, Attn: Winston A. Denmark, Jacquita L. Parks, Wallace D. Washington, and Earle Turner, 100 Hartsfield Center Parkway, Suite 400, Atlanta, GA 30354;

Ian Neubauer, Esq., 650 Saddle Creek Circle, Roswell, GA 30076;

Andrew J. Tine, Esq., Law Office of Andrew J. Tine, 18 Maple Avenue, Suite 267, Barrington, RI 02806.

/s/ Ryan Kelly
Ryan Kelly
Proposed Intervenor, pro se

15

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

**MAY 2 6 2026**

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| KAI THORUP, THE HALCYON HOUSE LLC, and OBSIDIAN NINE LLC, | ) ) ) |  |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) ) | Civil Action No. 1:25-cv-07429-TWT |
| CITY OF COLLEGE PARK, BIANCA MOTLEY BROOM, JAMELLE E. McKENZIE, RODERICK GAY, TRACIE ARNOLD, and JOSEPH CARN a/k/a JOE CARN, | ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

## SUPPLEMENTAL DECLARATION OF RYAN KELLY IN SUPPORT OF
## REPLY IN SUPPORT OF MOTION TO INTERVENE

I, Ryan Kelly, declare under penalty of perjury under 28 U.S.C. § 1746 that the following is true and correct:

1. I am Proposed Intervenor Ryan Kelly. I make this supplemental declaration based on my personal knowledge.

2. I personally hold title to the real property located at 2041 English Lane, College Park, Georgia 30337.

1

3. I seek intervention only in my individual capacity. I do not seek to represent 2041 English Lane, LLC, and I do not seek relief on behalf of that entity.

4. After the City issued the October 15, 2025 zoning notice and later denied the requested accommodation, the tenant remained in possession of 2041 English Lane.

5. Although rent payments became delinquent, the lease and tenancy did not end merely because payments were delinquent.

6. The tenant remained in possession until March 23, 2026.

7. Before vacating, the tenant did not provide me with a formal written notice of surrender, abandonment, termination, or relinquishment of the leasehold.

8. I requested formal clarification from the tenant concerning its position regarding the tenancy, but no formal written notice ending or surrendering the tenancy was provided before the tenant vacated.

9. While the tenant remained in possession, the accommodation denial and related land-use dispute remained under active challenge, including through the review proceedings described by the City in its opposition.

10. Before March 23, 2026, it remained possible that the tenancy, the contemplated use of the property, or both might be preserved through ongoing proceedings or resolution of the dispute.

2

11. After the tenant vacated on March 23, 2026, my need to protect my individual owner-side property interests in this case became practically clear.

12. I filed my Motion to Intervene on April 23, 2026, thirty-one days after the tenant vacated.

13. My proposed intervention is based on direct injury to my personal ownership, use, rental opportunity, and housing-related interests in 2041 English Lane.

Exhibits A through D are true and correct copies of records produced by the City of College Park in response to open-records requests or otherwise obtained from City-produced records.

14. Exhibit A is a City-produced email page in which City Planner Lenise Lyons asked, "Can we cite the property owner and Halcyon House with a zoning code violation?"

15. Exhibit B is a City-produced email page in which City Planner Lenise Lyons wrote that, "at the minimum, zoning code violations should be issued to the property owner and the operator, who is Halcyon House."

16. Exhibit C is a City-produced attorney email page discussing enforcement steps including a formal Notice of Zoning Violation, administrative penalties, and injunctive relief if voluntary compliance was not achieved.

3

17. Exhibit D is the October 15, 2025 notice page threatening civil penalties of up to $1,000 per day and legal action seeking a mandatory injunction relating to the property.

18. Exhibit E is a true and correct copy of the Limited Warranty Deed showing that Tax Parcel ID 14-0163-0001-041-7 was conveyed to me, Ryan Kelly.

19. Exhibit F is a true and correct copy of the Fulton County property/tax record identifying the same parcel number, 14-0163-0001-041-7, as 2041 English Lane and listing Kelly Ryan as the owner.

20. Exhibit G is a true and correct screenshot of text messages between me and Kai Thorup regarding turnover of the property. The messages show that, as of March 19, 2026, turnover had not yet occurred, that Kai stated Monday would be good for turnover, and that on Sunday, March 22, 2026, I confirmed I would be in town the next day to meet him. The turnover occurred on Monday, March 23, 2026.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of May, 2026.

/s/ Ryan Kelly
Ryan Kelly
1739 Saulter Rd.
Homewood, AL 35209
sigokelly@gmail.com
334-328-8419
Proposed Intervenor, pro se

**EXHIBITS A - G**

1

# EXHIBIT A

City-produced email page in which City Planner Lenise Lyons asks whether the City can cite the property owner and Halcyon House with a zoning code violation.

**From:** Sabrina Walters <SWalters@collegeparkga.gov>
**Subject:** RE: Code Violation - Halfway House established in R-2 Medium Density Residential Zone
**To:** Lenise Lyons
**Sent:** October 8, 2025 3:32 PM (UTC-04:00)
**Attached:** Fwd_ House bill 1073.eml, HB 1073.pdf

Lenis,

Please read the attachments. I had it on legal review. No immediate outcome.

---

**From:** Lenise Lyons <Lenise.Lyons@collegeparkga.gov>
**Sent:** Wednesday, October 8, 2025 2:40 PM
**To:** Sabrina Walters <SWalters@collegeparkga.gov>
**Subject:** Re: Code Violation - Halfway House established in R-2 Medium Density Residential Zone

Sabrina,

Can we cite the property owner and Halcyon House with a zoning code violation?
Sent from my iPhone

> On Oct 8, 2025, at 10:33 AM, Lauren <██████████████> wrote:
>
>
> Good morning,
>
> I just wanted to check in on this issue. Where do we currently stand in the process? Has the property owner (Ryan Kelly) been contacted and made aware that the intended use of the property is illegal in College Park? Is there anything else you need from us?
>
> I've seen the code enforcement trucks driving by, but I am not sure what they are looking for. The men who are moving in/setting up the house are usually there in the afternoons and on the weekends.
>
> I can provide contact information for Ryan Kelly (property owner) as well as the company, Halcyon House, owner Kai Thorup. They have continued to move in and to promote the sober living group home on social media.
>
> https://www.instagram.com/the.halcyon.house/
> https://atlanta.craigslist.org/atl/sub/d/atlanta-the-halcyon-house-sober-living/7883493341.html
> https://thehalcyonhouse.org/
>
> Thank you,
>
> **Lauren** Hartley
> ██████████████████
> ██████████
>
> On Fri, Oct 3, 2025 at 4:39 PM Lauren <██████████████> wrote:
>
>> Yes, we can't thank y'all enough for your quick response and immense help!!

# EXHIBIT B

City-produced email page stating that, at minimum, zoning code violations should be issued to the property owner and the operator.

*Where Local Governments Turn for Legal Insight*

Privacy Information - O.C.G.A. 50-18-72(a)(20)(A)

100 Hartsfield Centre Pkwy, Suite 400, Atlanta, Georgia 30354

**Connect With Us:**

Website | Facebook | X (Twitter) | LinkedIn |

Confidentiality Notice: This e-mail, including attachments, contains information from the law firm of Denmark Ashby Matricardi and is intended solely for the use of the named recipient(s). This communication, including attachments, may contain information that is confidential and protected by the attorney/client and/or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments, without reading or saving it in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege. In the absence of an executed fee agreement or engagement letter, there is no attorney-client relationship created by this communication. If you have received this e-mail in error, please immediately notify the sender of the e-mail or call (770) 478-9950.

---

**From:** Lenise Lyons <Lenise.Lyons@collegeparkga.gov>
**Sent:** Thursday, October 9, 2025 11:17:30 AM
**To:** Elle Whigham <ewhigham@dam.law>; Bianca Motley Broom <bmotleybroom@collegeparkga.gov>; Lindell Miller <Lindell.Miller@collegeparkga.gov>; Sabrina Walters <SWalters@collegeparkga.gov>; Alencia Carter <Alencia.Carter@collegeparkga.gov>; Kenneth Brown <Kenneth.Brown@collegeparkga.gov>; Winston Denmark <wdenmark@dam.law>
**Cc:** Jamelle McKenzie <jmckenzie@collegeparkga.gov>
**Subject:** Re: Follow-Up on English Lane Code Violation

@Elle,

You're correct that R-2 does not allow either group homes, halfway houses, or rooming houses by right or conditional use. There has been no application approved application for these uses or active application for business license.

A little over a week ago, the neighbors adjacent to this home began contacting City departments and officials about this issue. I believe that Code Enforcement has investigated but I'm not sure if any citations have been issued. I think at the minimum, zoning code violations should be issued to the property owner and the operator, who is Halcyon House.

**Lenise Lyons, AICP, JustCommunities AP**

**City Planner**

City of College Park · Planning and Growth Management

3667 Main Street, College Park, Georgia 30337

(o) 404-767-1537 or Ext. 1814 · (m) 470-716-0065

lenise.lyons@collegeparkga.com

www.collegeparkga.com

5

# EXHIBIT C

City attorney email page discussing formal Notice of Zoning Violation, administrative penalties, and injunctive relief.

either by right or conditional use. As a result, the operation is prohibited by default, and no special or conditional use permit can be lawfully granted under the current zoning code.

Although Section 6.12 of the zoning ordinance sets standards for group homes and halfway houses, that section is only applicable in districts where such uses are permitted, which is not the case here. Compliance with those operational standards (e.g., parking, safety, spacing) cannot legitimize an otherwise unlawful use.

In addition to the zoning issue, there is no occupational tax certificate or business license on record for the operator, which constitutes a separate violation under Chapter 11 of the City Code and O.C.G.A. § 48-13-26.

We are also reviewing parking and life-safety concerns, as the current use is creating congestion and hazards that further support enforcement action.

Next steps will **likely** include issuing a formal Notice of Zoning Violation, initiating code enforcement inspections, and coordinating with business licensing for administrative penalties. If voluntary compliance is not achieved, the City has authority under Article 15 to pursue injunctive relief in Superior Court.

I'll be in touch shortly with finalized documents and recommendations for action.

Thanks,

**Elle Whigham,** Associate
*Where Local Governments Turn for Legal Insight*



## Denmark Ashby & Matricardi

ATTORNEYS

100 Hartsfield Centre Pkwy, Suite 400, Atlanta, Georgia 30354

**Connect With Us:**
Website | Facebook | X (Twitter) | LinkedIn |

Confidentiality Notice: This e-mail, including attachments, contains information from the law firm of Denmark Ashby Matricardi and is intended solely for the use of the named recipient(s). This communication, including attachments, may contain information that is confidential and protected by the attorney/client and/or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments, without reading or saving it in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege. In the absence of an executed fee agreement or engagement letter, there is no attorney-client relationship created by this communication. If you have received this e-mail in error, please immediately notify the sender of the e-mail or call

---

**From:** Sabrina Walters <SWalters@collegeparkga.gov>
**Date:** Friday, October 10, 2025 at 9:25 AM
**To:** Elle Whigham <ewhigham@dam.law>, Lenise Lyons <Lenise.Lyons@collegeparkga.gov>, Bianca Motley Broom <bmotleybroom@collegeparkga.gov>, Lindell Miller <Lindell.Miller@collegeparkga.gov>, Alencia Carter <Alencia.Carter@collegeparkga.gov>, Kenneth Brown <Kenneth.Brown@collegeparkga.gov>, Winston Denmark <wdenmark@dam.law>
**Cc:** Jamelle McKenzie <jmckenzie@collegeparkga.gov>
**Subject:** RE: Follow-Up on English Lane Code Violation

Elle,

No it has not.

# EXHIBIT D

October 15, 2025 Notice of Zoning Violations page threatening daily civil penalties and mandatory injunctive relief.



**SENT VIA CERTIFIED U.S. MAIL & ELECTRONIC MAIL**

To:  The Halcyon House LLC
    Attn: Kai Thorup
    Registered Address: 3390 Peachtree Road NE, Suite 320, Atlanta, GA, 30326
    Principal Address: 4413 Sublime Trail, Atlanta, GA, 30349
    Violation Address: 2041 English Lane, College Park, Georgia 30337
    kaithorup@gmail.com

From:  City of College Park, Georgia
    Office of the City Planner
    3667 Main Street
    College Park, Georgia 30337

Date:  October 15, 2025

Subject: **NOTICE OF ZONING VIOLATIONS REGARDING PROPERTY
    LOCATED AT 2041 ENGLISH LANE, COLLEGE PARK, GEORGIA 30337**

---

Dear Mr. Thorup:

  This letter serves as official formal notice ("Notice") that the property located at 2041 English Lane, College Park, Georgia 30337 ("Property") is in violation of the City's Zoning Ordinance.

  Following investigation by the City Planner's Office and review of public records and digital advertisements, it has been determined that the Property is being used as a sober living facility, group home, or halfway house marketed as "The Halcyon House." This type of congregate living arrangement constitutes a use that is not permitted within the R-2 (Medium Density Residential) zoning district ("R-2 Zoning District") under the City's zoning code.

  According to the City's Code of Ordinances ("Code"), Appendix A, Section 3.5, the R-2 Zoning District allows only certain low-density residential uses. Uses such as group homes, halfway houses, boarding houses, and other shared living or recovery facilities (see City Code, Appendix A, Sec. 1.4 "Definitions") are not listed as either permitted or conditional uses within Section 3.5 and are therefore prohibited. Accordingly, this unlawful use constitutes a violation of Appendix A, Section 15.7(d), which prohibits any use that does not comply with the provisions or intent of the zoning ordinance. In addition, there is no mechanism under current law for the applicant to apply for a conditional use permit for this use in the R-2 Zoning District. **Therefore, this use is not eligible for zoning approval in any form.**

9



You are hereby directed to **immediately cease and desist** the unlawful operation of all violations within Appendix A of the City's Code. You are provided fifteen (15) calendar days from the date of this Notice to bring the Property into full compliance with the zoning ordinance. Failure to cure this violation within the time allotted may subject you to civil penalties as authorized by Section 15.10, including fines of up to $1,000.00 per day, which may accrue for each day the violation continues beyond the deadline. Should voluntary compliance not be achieved, the City will initiate legal action seeking a mandatory injunction to enjoin the continued illegal use of the Property and to enforce full compliance with the City's zoning laws.

In accordance with Section 15.11 of the Zoning Ordinance, you have the right to appeal this Notice of Violation to the Board of Zoning Appeals. To do so, you must submit a written request for a hearing to the City Planner by Certified Mail within thirty (30) days of the date of this notice. Once filed, you will have up to six (6) months to complete the hearing process. If you fail to initiate or complete the appeal within this timeline, all fines and enforcement actions may proceed without further notice.

Thank you for your attention to this matter.

Sincerely,

Lenise Lyons, City Planner
City of College Park, Georgia
Lenise.lyons@collegeparkga.gov

10

## EXHIBIT E

Deed demonstrating Ryan Kelly is owner of property located at parcel 14-0163-0001-041-7.

11

RETURN TO:
Hodge & Temple, PC
549-4 Amsterdam Ave
Atlanta, GA 30306

ePN Recorded Electronically
Book 63232 p. 247
County FULTON
Date 2/24/2021
Time 3:06 PM

Tax Parcel ID: 14-0163-0001-041-7

# LIMITED WARRANTY DEED

This Indenture made this **24th day of February, 2021** between

## Steven R. Thompson

of the County of Fulton, and State of Georgia, as party or parties of the first part, hereinafter called Grantor, and

## Ryan Kelly

as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

**WITNESSETH**: That the said GRANTOR, for and in consideration of the sum of Ten and No/100 DOLLARS, in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged has granted, bargained, sold and conveyed and by these presents do grant, bargain, sell and convey unto the said GRANTEE the following described property:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 163 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA BEING LOT 7, BLOCK A OF THE ENGLISH FOREST SUBDIVISION, PER PLAT RECORDED IN PLAT BOOK 60, PAGE 130, FULTON COUNTY, GEORGIA RECORDS, SAID PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE. Parcel ID Number: 14-0163-0001-041-7. Subject to any Easements or Restrictions of Record.

**TO HAVE AND TO HOLD** the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in any wise appertaining to, the only proper use, benefit and behoof of the said GRANTEE forever **IN FEE SIMPLE**.

**AND THE SAID** Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of Grantor and all others claiming by, through or under Grantor.

**IN WITNESS WHEREOF**, the Grantor has signed and sealed this deed, the day and year above written.

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Steven R. Thompson

_____
Notary Public

*(Notary seal: CATHERINE KEEHFUS, NOTARY PUBLIC, DEKALB COUNTY, GEORGIA, MY COMMISSION EXPIRES AUGUST 25, 2023)*

12

# EXHIBIT F

Tax document linking parcel 14-0163-0001-041-7 to 2041 English Lane.

Jul. 7, 2025          RESIDENTIAL / RURAL REVIEW DOCUMENT          PAGE: 44821
01:57 PM                         FULTON, GA                       CA320N

**PARCEL**  14 -0163-0001-041-7                CARD NO.      1 OF  1    TAX YEAR      2025    TIEBACK
**ALT ID**  1432723              MAP/ROUTE                  FIELD REVIEW FLAG

TAX CODE            ZONING   R1     TAX DIST    15    COLLEGE PARK                      CITY CODE 15        -------- DWELLING DESCRIPTION --------
ADDRESS   2041 ENGLISH LN                                                                                 Story Height              2.00
NEIGHBORHOOD   1455        RESTRICTIONS                    /           /                                  EXT. WALL      1    FRAME
LAND USE CODE   101        ------OWNER INFORMATION------    ---------- SALES INFORMATION --------         STYLE          01   CONVENTIONAL
LIVING UNITS        0         KELLY RYAN                    DATE     TYPE     PRICE  SRC  VAL              YR BLT/RMDL/EFF       2004 /      /
CLASS   R3                                                  24-FEB-21  2     398,000  6    0              TOT RM   10  BDRM   4  FRMS 1
BOOK/PAGE:   63232/0247                                     27-JAN-05  3           0  D    T              FBTHS   4 HBTH   1 ADDN  6 TOT-FIX   20
------ PROPERTY FACTORS ------                              27-JAN-05  3           0  D    T              KIT/BATH RMDL
TOPO    3 /  /     BELOW STREET   /LOW            /                                                       BASEMENT        3    PART
UTILITY  1 /  /                   /               /           --- ENTRANCE INFORMATION ---               HEATING         4    CENTRAL WITH A/C
STR/RDS  1 /  /                   /               /           DATE      CODE   INFO CD      ID            FUEL TYPE       1    GAS
FRT    9                                                      02/15/22  121                327           SYSTEM          1    WARM AIR
LOC    6                          SPOT LOC           %        11/08/06  F                  000           ATTIC           1    NONE
PARKING TYPE    2  QUANTITY    2  PROXIMITY       2           03/02/05  2                  JW             PHYS. COND      3    AVERAGE
AVAIL   ON STREET    /ADEQUATE    / ADJACENT                                                             INTERIOR/EXTERIOR
------------------ BUILDING PERMIT RECORD  ---------------   ------------- NOTES -----------             Masonry Trim                0              0
DATE       NUMBER                 AMOUNT PURPOSE   O/C   NOTE CD:                                         Unfinished Area             0              0
02/23/04   B 2595                 120,000 NR        1   NOTE CD:                                          Recreational Room           0              0
                                                       NOTES:  F/C 11/06                                 Finished Basement Liv:      0              0
                                                       NOTES:  AN FORECL2003 FINAN SALE 2004             Bsmt Finish                 0              0
                                                       NOTES:                                            Fireplace - s  1 Fireplace open    1
                                                       NOTES:                                            Fireplace - prefab          0          3425
--------- L A N D   D A T A  ---------    -------------------- C A L P   T A B L E -----------------     BSMT.GAR.(NO CARS)          0              0
TY              AC/SQFT/UNIT                     BASE              BASE       INCR CHG                     MISC O.F. DESC       QUAN.                 0
PE  LN  CD      FRONT DEPTH         PRICE INFL-FAC   SIZE CLASS   RATE       /DECR RSN        LAND-VAL    MISC O.F. DESC       QUAN.                 0
S    1  1          31,085              4          25,000          .8          .26            126710       NOTES1
PRIMARY SITE                                     ADJ FACTOR (CA14)  5.8713   .26                         NOTES2
                                                                                                        G.F.L.A.                 1,446
                                                                                                        GRADE FACTOR     C       1.00
                                                                                                        COST/DESIGN FACTOR              %
                                                                                                        CDU                      AV
                                                                                                        --- C O N D O M I N I U M   D A T A ---
                                                                                                        LEVEL

                                                                                                        TYPE                     CLASS:
                                                                                                        VIEW                     RSN  :
                                                                                                        COMPLEX NO:

                                                                                                        MH substructure

                                                                                                        MH Roof Strcuture

GROSS      LN CD          VALUE                   IN FL- FAC         LAND-VAL
TOTAL ACRES          .7136                        TOTAL LAND-VALUE          126,700
TOTAL SIZE           .7100 ACRES N/MDL    1     ZONE  25  LOC   0    UTILITY    1 STREET     1        MISC.IMPROV                                     0
                          LAND ADJ             ADJ FACTOR (CA11) 1.0000  ADJ FACTOR (AA44) 1.0000   ------------------------------------------------
                                                                                                    TOTAL OBY & MISC IMPROV. VALUE               0
                                                                                                    GROSS BUILDING SUMMARY
                                                                                                    DESCR                    VALUE               0



18084508-13543-1-2

Jul. 7, 2025                    RESIDENTIAL / RURAL REVIEW DOCUMENT                        PAGE:  44822
01:57 PM                                    FULTON, GA                                     CA320N

| | | |
|---|---|---|
| **PARCEL** | 14-0163-0001-041-7 | CARD NO.    1 OF  1    TAX YEAR    2025    TIEBACK |
| **ALT ID** | 1432723          MAP/ROUTE | FIELD REVIEW FLAG |

| | | SKETCH VECTORS |
|---|---|---|
| G.F.L.A. | 1,446 | |
| S.F.L.A. | 2,960 | A0CU41R20U2R16D8R10D19L22D11L12D5L12 |
| ---------- DWELLING COMPUTATIONS ---------- | | A1R12CU5X12 |
| BASE PRICE | 130,416 | A2D5R25CU5X22 |
| BASEMENT    3    PART | -5,266 | A3R24CU16X22 |
| HEAT        4    CENTRAL W/? | 4,937 | A4R12U5R12U11R22U20CL10X5 |
| PLUMBING (TOT=      20     ) | 10,275 | A5U41R20U2CU2X12 |
| ATTIC      1    NONE       ) | 0 | A6U41R20U4CU10X12 |
| OTHER FEATURES | 3,425 | |

| | | |
|---|---|---|
| *SUB TOTAL | 143,790 | |
| GRADE FACTOR        C | 1.00 | |
| C & D FACTOR           X | 0% | |
| CDU | AV | |
| BASE RCN/SF       99.44 | 143,790 | |
| USER FACTOR | 1.00 | |
| USER AMOUNT | 0 | |
| ADDITIONS RCNLD | 10,320 | |
| PERCENT GOOD         X | 86% | |
| FUNCTIONAL DEP       X | % | |
| ECONOMIC DEP         X | % | |
| RCNLD PER SF      45.26 | 133,980 | |
| PERCENT COMPLETE     X | 100% | |
| DWELLING FACTOR      X | 2.2383 | |
| *SUB TOTAL* | 299,890 | |
| O.B. & Y. VALUE | 0 | |
| GROSS IMPRV. | 0 | |
| TOTAL CARD VALUE | 299,890 | |
| CONDO BASE VALUE | 0 | |
| CONDO ADJ. VALUE | 0 | |

--------------------------------------------- ADDITIONS ---------------------------------------------

| LINE | LOW | 1ST | 2ND | 3RD | AREA | YRBLT | EFFYR | GRADE | CDU | %COMP. | RSN | VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | | | | | 1446 | | | | | | | |
| 1 | | 11 | 32 | | 60 | | | | | | | 1,800 |
| 2 | | 13 | 19 | | 110 | | | | | | | 2,500 |
| 3 | | 13 | | | 352 | | | | | | | 5,000 |
| 4 | | | 31 | | 50 | | | | | | | 500 |
| 5 | | | 16 | | 24 | | | | | | | 1,000 |
| 6 | | | 31 | | 120 | | | | | | | 1,200 |

----- PARCEL SUMMARY COST VALUE --------

| | |
|---|---|
| TOTAL LAND VALUE | 126,700 |
| TOTAL BLDG VALUE | 299,900 |
| TOTAL COST VALUE | 426,600 |

--------------- OTHER BUILDING & YARD IMPROVEMENTS ------------------

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CURRENT LAND | 126,700 | BUILDING | 299,900 | TOTAL | 426,600 | TYP   YR  CLASS    EFF    SIZE GRD    QN MODS    CF  %COMP MA%    VALUE | | | |
| ASSESSED LAND | 0 | BUILDING | 0 | TOTAL | 0 | | | | |
| REVIEW CODE | 1  COST APPROACH | REVIEW REASON | | | | | | | |
| REVIEW DATE | 15-FEB-22 | REVIEWER ID | 327 | | | | | | |

ESTIMATE LAND  _____    BUILDING  _____    TOTAL  _____

REVIEW CODE  ___            REVIEW REASON  _____

REVIEW DATE  _____     REVIEWER ID  _____

DATA MAILER:  SENT 00/00/00    RECEIVED 00/00/00    MAINTAINED ON  20-AUG-24

18084506-13543-2-2

# EXHIBIT G

Text messages supporting turnover of property on March 23, 2026.

16



machine in the garage. Actively king to sell it no too vy to move with uck, movers, destination

**Kai ›**



You can leave it or take it, but I need to reclaim the property.

How about I give you $100 for it and we close the deal so I can move forward with suing the city.

Thu, Mar 19 at 11:13 AM

It's a $1600 machine.  Someone is meant to pick up the machine with a truck Saturday. Or I will get a U-Haul and take it away. Otherwise the house is virtually empty.

Ok, I really appreciate that. So is Monday good for turnover?

Yes.  Monday and I'll have it clear regardless.

Great, I'll see you then.

Sun, Mar 22 at 4:50 PM

Hey, I'm going to be in town about 4:00 pm tomorrow to meet you. Is that good for you?

17



Ryan & Leigh Ann Kelly

1739 Saulter Road
Homewood , Al 35209



**CERTIFIED MAIL**

9589 0710 5270 3260 0317 7

CLEARED DATE

MAY 26 2026



Retail



UNITED STATES
POSTAL SERVICE ®

RDC 99

30303



U.S. POSTAGE PAID
FCM LG ENV
BIRMINGHAM, AL 35209
MAY 18, 2026

**$9.86**

S2324H500551-28

Clerk of Court

United States District Court

Northern District of Georgia, Atlanta Division

Richard B. Russell Federal Building & United States Courthouse

2211 United States Courthouse

75 Ted Turner Drive, SW

Atlanta, GA 30303-3309

ATTN:

Kai Thorup, et al. v. City of College Park, et al., Civil Action No. 1:25-cv-07429-TWT